Gerald E. Hawxhurst (Bar No. 220327)
  jerry@cronehawxhurst.com
Daryl M. Crone (Bar No. 209610)
  daryl@cronehawxhurst.com
Joshua P. Gelbart (Bar No. 274021)
  jgelbart@cronehawxhurst.com
CRONE HAWXHURST LLP
10880 Wilshire Blvd., Suite 1150
Los Angeles, California  90024
Telephone:   (310) 893-5150
Facsimile:    (310) 893-5195

Attorneys for Defendant
Innovation Ventures, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| VI NGUYEN, as an individual, and on behalf of others similarly situated,<br><br>           Plaintiff,<br><br>     vs.<br><br>INNOVATION VENTURES, LLC dba LIVING ESSENTIALS, a Michigan corporation,<br><br>           Defendant. | CASE NO. SACV-10-1217-JST (MLGx)<br><br>**DEFENDANT'S RESPONSE TO THE APPLICATION OF NON-RESIDENT ATTORNEY HOWARD W. RUBINSTEIN;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declaration of Joshua P. Gelbart and [Proposed] Order filed concurrently herewith] |

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Local Rule 83-2.3 provides that, in order for an out-of-state attorney to practice before this Court, the attorney must first seek permission to appear *pro hac vice*. Having filed this case nearly one year ago, Plaintiff's lead counsel, Howard W. Rubinstein, recently filed an "Application of Non-Resident Attorney to Appear in a Specific Case " (the "Application"). Defendant Living Essentials respectfully files this response to Mr. Rubinstein's Application in order to provide information that should have been disclosed by him, but was not, and to provide the Court additional information that bears on Mr. Rubinstein's Application.

Mr. Rubinstein's Application to be admitted *pro hac vice* is not merely a ministerial matter: it is the manner by which the Court, Defendant and Plaintiff are assured that Plaintiff's out-of-state counsel is properly before the Court. An Application to appear *pro hac vice* is also one of the ways courts require out-of-state lawyers to be familiar with and comply with the same procedural and ethical rules that apply to resident lawyers.

For the reasons described below, Defendant respectfully requests that the Court deny Mr. Rubinstein's Application and enter an order that requires him and his co-counsel to provide clear answers to the questions raised by his Application and by Plaintiff Vi Nguyen's recent deposition testimony, including her testimony that she was instructed to sign and backdate an engagement agreement just days before giving a deposition in this case, and that she was instructed by her counsel to purchase Defendant's product with the intent and for the purpose of filing this lawsuit.

# Relevant Factual Background

## A. Plaintiff's Allegations

This case was filed August 11, 2010. (See Dkt. No. 1.) In it, Plaintiff Vi Nguyen seeks to represent a nationwide class of plaintiffs who allegedly were misled into buying defendant's product, "5-Hour Energy." (See, e.g., FAC (Dkt. No. 14) ¶ 24.) Plaintiff seeks over $5,000,000.00 in damages and an injunction requiring defendant to change the name of its product, among other things. (See id. ¶¶ 2, 41.)

According to her complaint, Plaintiff bases her individual claims on the allegation that she purchased 5-Hour Energy on April 7, 2010 (id. ¶ 22) and that she was induced into doing so based on allegedly misleading statements on the product label. (See id. ¶¶ 23, 24.) Plaintiff alleges that she (and the proposed class of plaintiffs she purports to represent) were "overcharged" for the product, that she suffered a "crash" after drinking the product, and that she suffered physical injuries by consuming the product. (See id. ¶ 25.)

## B. Plaintiff's Counsel

### 1. Howard W. Rubinstein, a/k/a Howard M. Rubinstein, a/k/a Howard Rubinstein

Plaintiff's "lead" counsel is Howard W. Rubinstein. (See, e.g., FAC (Dkt. No. 14) caption page; Application (Dkt. No. 44) at page 2.) It is undisputed that Mr. Rubinstein is not admitted to practice law in California. (Application (Dkt. No. 44) at page 1).)

Although he purports to have a law office in Aspen, Colorado, Mr. Rubinstein is not licensed to practice law in Colorado and his law firm is not registered with the Colorado Secretary of State. (See Gelbart Decl. ¶ 2.) According to his website, Mr. Rubinstein purports to be admitted to practice law in Washington, D.C., but he is not a member of the Washington, D.C. bar, either. (See Gelbart Decl., Ex. A and ¶ 3.) Mr. Rubinstein appears to be a member of the Florida bar and a member of the

Texas bar, where he goes by the name "Howard M. Rubinstein." (See Gelbart Decl. ¶ 4.)

According to PACER searches, Mr. Rubinstein has appeared in at least 47 federal cases in California. (See Gelbart Decl. ¶ 5.) Oddly, he uses various forms of his name on the different cases. Sometimes Mr. Rubinstein omits the middle initial "W" from his name. (See id. ¶ 6.) Other times—such as in this case—he gives his name as "Howard W. Rubinstein." In other cases he lists his name as Howard *M*. Rubinstein, rather than Howard *W*. Rubinstein. (See id.)

Mr. Rubinstein also uses various addresses. Sometimes he uses a physical address in Aspen. (See id. ¶ 7.) Other times he uses a post office box in Aspen, while other times he uses addresses in Florida. (See id.) When Mr. Rubinstein does submit *pro hac vice* applications, his Certificates of Good Standing from the Florida bar are directed to either a post office box or street address in a small town in Texas. (See id. ¶ 8; see also Application (Dkt. No. 44) at page 3.)

**2. The California Lawyers**

Plaintiff is also represented by four other lawyers, three of which are licensed to practice in California: Harold Hewell, Richard Proaps, and Rhett Rosen. (See, e.g., FAC (Dkt. No. 14) caption page (Hewell); Application (Dkt. No. 44) at page 2 (Proaps and Rosen).) Benjamin Lopatin is not licensed to practice in California. (See, e.g., Gelbart Decl. ¶ 9.)

Messrs. Hewell and Proaps reside and practice law in California. (See Gelbart Decl., Exs. G, H.) Mr. Proaps holds himself out as an attorney employed by the Law Office of Howard W. Rubinstein (see id.; see also Application (Dkt. No. 44) at page 2), even though The Law Office of Howard W. Rubinstein does not have an office in California and is not registered with the California Secretary of State or the California State Bar. (See Gelbart Decl. ¶ 10.) At the same time he holds himself out as an attorney with The Law Offices of Howard W. Rubinstein, Mr. Proaps also holds himself out as an attorney with The Law Office of Richard A.

Proaps.

### 3. The Texas Lawyers

Plaintiff is also represented by a Texas law firm, Salazar & Tellawi, P.L.L.C., who have not appeared in this case. (See Gelbart Decl., Ex. I.) Neither attorney Salazar nor attorney Tellawi is licensed to practice law in California. (See id. ¶ 11.) As described more fully below, Plaintiff testified at deposition that she signed an engagement agreement with Salazar & Tellawi the week before her deposition in this case on *June 9, 2011*, but that she was instructed to backdate it to *April 9, 2010*.

### C. Plaintiff's Deposition Testimony

Defendant finally began Plaintiff's deposition on June 9, 2011, after several notices and attempts to depose her had been ignored. (See Nguyen Depo. Tr. (Gelbart Decl., Ex. J) at 164:9-168:13.) As shown below, Plaintiff's testimony raises serious questions related to Mr. Rubinstein's Application and as to her other counsel in this case.[1]

### Ms. Nguyen Does Not Know Much About Her Lawyers

- Ms. Nguyen testified that she has never seen Messrs. Hewell, Proaps or Lopatin. (See Nguyen Depo. Tr. (Gelbart Decl., Ex. J) at 41:14-18; 43:2-22; 70:1-7.)
- Ms. Nguyen testified that the first time she met Mr. Rubinstein was at a hotel the night before her deposition. (See id. at 30:4-31:20.)
- Ms. Nguyen testified that Mr. Rubinstein told her he was admitted to practice law in Colorado (see id. at 39:7-12), even though he is not. (See Gelbart Decl. ¶ 2.)

---

[1] Ms. Nguyen's testimony also established that her claims are wholly without merit, that she is not an adequate class representative, and that the claims in the complaint are not amenable to class action treatment. Defendant looks forward to presenting this evidence to the Court.

- At the time of her deposition, Ms. Nguyen did not have a written engagement agreement with Messrs. Rubinstein, Proaps, Hewell, Lopatin or Rosen (see Nguyen Depo. Tr. (Gelbart Decl., Ex. J) at 37:10-21; 41:25-42:22; 172:18-173:1), even though California law requires these lawyers to have a written and signed engagement agreement with her at the inception of their engagement. See Cal. Bus. & Prof. Code § 6147.

- Ms. Nguyen testified that she does not know whether Messrs. Rubinstein, Proaps, Hewell or Lopatin are licensed to practice law in California or in any other state. (See Nguyen Depo. Tr. (Gelbart Decl., Ex. J) at 38:7-12; 39:22-41:7; 50:6-13; 52:16-53:10.)

- Ms. Nguyen has never met the Salazar & Tellawi lawyers in person. She hired them via telephone on the recommendation of her 23-year old cousin, who is a paralegal at the firm. (See Nguyen Depo. Tr. (Gelbart Decl., Ex. J) at 47:13-17; 53:11-54:21.)

**The Backdated Engagement Agreement**

- Ms. Nguyen testified that she has a written engagement agreement with Salazar & Tellawi, a Texas law firm. However, Ms. Nguyen testified that she did not sign the engagement agreement until the week before her June 9, 2011 deposition, when she was instructed to sign and backdate the agreement to April 9, 2010—coincidently a date that is two days after she claims to have made the purchase that gives rise to her claims. (See id. at 172:2-8; 213:22-214:21; and Gelbart Decl., Ex. I.)

- Following a break at her deposition, Ms. Nguyen attempted to change her testimony that she backdated the engagement agreement. In response to questions by Mr. Rubinstein, she testified that she had not signed or backdated the engagement agreement the week before her deposition on June 9, 2011, and that she was confused when she testified that she had. (See Nguyen Depo. Tr. (Gelbart Decl., Ex. J) at 219:3-23.)

5
DEFENDANT'S RESPONSE TO APPLICATION OF NON-RESIDENT ATTORNEY RUBINSTEIN

- The revised testimony that Mr. Rubinstein solicited from Ms. Nguyen—that she had not signed and backdated the engagement agreement the week before her deposition—was simply not true, as Ms. Nguyen admitted on further cross-examination by Defendant's counsel. (See id. at 221:20-224:18.)

- In response to more questioning by Mr. Rubinstein (after yet another break), Ms. Nguyen attempted to change her testimony again, this time testifying that she may or may not have signed an engagement agreement with Salazar & Tewalli in April 2010. (See id. at 225:3-226:15.) Although Ms. Nguyen suggested that she believed she had an earlier copy of the engagement letter on her computer, she could not explain why it was not produced in discovery or why, if that were true, there was a need to sign and backdate the same agreement one year later and just a week before her deposition. (See id. at 226:17-229:2.) In fact, Ms. Nguyen testified that the person who instructed her to backdate the agreement did not mention an earlier signed agreement, and neither did Ms. Nguyen. (See id. at 227:5-229:2.)

- As for the Salazar & Tellawi engagement agreement itself, Ms. Nguyen testified that it was not negotiated and entered into in Massachusetts, contrary to the agreement saying so, and that she did not understand why any dispute between her and Salazar & Tellawi (a Texas firm that appears to not have an office in Massachusetts) had to be arbitrated in Massachusetts under Massachusetts law. (See id. at 210:11-212:12; see also Salazar & Tellawi engagement agreement (Gelbart Decl., Ex. I) at ¶ XV.)

**The Lawyers Told Ms. Nguyen to Buy the Product So She Could Sue**

- Ms. Nguyen testified that she was instructed by the lawyers to buy 5-Hour Energy for the purpose of suing Living Essentials. (See Nguyen Depo. Tr.

(Gelbart Decl., Ex. J) at 129:23-130:21.)

- Ms. Nguyen testified that, just as her lawyers told her to, she purchased two bottles of 5-Hour Energy on April 7, 2010, knowing full well that she was buying them for the purposes of filing this lawsuit. (See id. at 130:17-21.)

### The Lawyers Are Really the Plaintiffs Here

- Ms. Nguyen testified that she does not believe she has ever read the original or first amended complaint. (See Nguyen Depo. Tr. (Gelbart Decl., Ex. J) at 161:1- 163:10.)

- Ms. Nguyen conceded that her lawyers did not even know whether she was a man or a woman, having referred to her throughout some pleadings as "Mr. Nguyen" or "he" or "him," and as "Ms. Nguyen," "she" or "her" throughout other pleadings. (See id. at 186:24-188:16; 217:3-218:13.)

- Ms. Nguyen testified that her lawyers never sent her the several deposition notices that Defendant had served on them seeking her deposition. (See id. at 164:9-168:13.)

- Ms. Nguyen's testimony also contradicted key allegations in her complaint. Contrary to what her lawyers wrote, Ms. Nguyen testified that that she was *not* alleging any physical injury, that she was *not* alleging damages for any sort of "overcharge," that she was *not* alleging that the product label suggested she would have energy to run up a hill, and that she was *not* alleging that she experienced a "crash" after drinking the product. (See, e.g., id. at 132:6-133:11; 192:14-193:11.) Ms. Nguyen further testified that she was not misled into buying the product on April 7, 2010 as alleged in her complaint, but instead was told by the lawyers to buy the product that day so she could file this lawsuit, and that she bought the product that day knowing she would be filing this lawsuit. (See id. at 132:6-133:11.)

### D. The "Revised Retainer Agreement"

On June 28, 2011, Plaintiff's counsel filed a "Notice of Revised California Retainer Agreement" (the "Notice"). (See Dkt. No. 40.) In that filing, Plaintiff's counsel states that "Notice is hereby given that Plaintiff has a revised retainer agreement that is compliant with California law," and that a "true copy of the retainer agreement is . . . filed herewith." (See id. at 2.)

The "Revised Retainer Agreement" is interesting, to put it mildly, and it is far from certain that it "is compliant with California law." For instance, it purports to be an engagement agreement between Ms. Nguyen and the "Hewell Law Firm," but it is signed by Howard W. Rubinstein on behalf of The Law Offices of Howard W. Rubinstein. (Compare Revised Retainer Agreement (Gelbart Decl., Ex. D) at page 1, with page 5.)[2]

Just as troubling, the Revised Retainer Agreement purports to cede full control over the litigation to the lawyers. It provides the lawyers "full authority" to file pleadings and conduct the litigation, including negotiating any settlement, without any input from Ms. Nguyen. (See Revised Retainer Agreement (Gelbart Decl., Ex. D) § 4.1.)

As an another example, the Revised Retainer Agreement lists Mr. Proaps as an attorney with the Law Office of Howard W. Rubinstein (see id. § 2.3), but Mr. Proaps has his own California law firm (Law Offices of Richard A. Proaps), whereas "The Law Office of Howard W. Rubinstein" does not have a California office and is not registered with the California Secretary of State or the California State Bar. (Gelbart Decl. ¶ 12.)

---

[2] Defendant has redacted Ms. Nguyen's personal information from the revised Retainer Agreement, submitted as Exhibit D to the Gelbart Declaration (something Ms. Nguyen's lawyers did not do when they filed it with the Court).

### E. Mr. Rubinstein's Belated *Pro Hac Vice* Application

Although this case has been pending for almost a year, Mr. Rubinstein only recently applied to be admitted *pro hac vice*. He did so only after Defendant told him it was going to seek a court order requiring him to do so in light of Ms. Nguyen's troubling deposition testimony, the backdated engagement letter, Mr. Rubinstein's repeated failure to comply with the local rules, and the testimony by a plaintiff in another California class action filed by Mr. Rubinstein.

As the Court is aware, Mr. Rubinstein has made a series of filings in connection with his Application, some of which the Court has stricken *sua sponte*. (See Order to Strike Electronically Filed Documents (Dkt. No. 43).)

The original Application was filed June 28, 2011. (See Dkt. No. 41.) The original Application, however, had the caption of a different case and the wrong case number. In his original Application, Mr. Rubinstein claims to be admitted in Florida and the U.S. District Courts of Colorado. (See id. at 1.) But Mr. Rubinstein does not disclose that he is admitted to practice law in the State of Texas, nor does he attach a certificate of good standing from the Texas bar, although he is clearly required to do so.[3]

Mr. Rubinstein was also required to disclose to the Court all *pro hac vice* applications that he has submitted to court's in this district during the last three years. Mr. Rubinstein listed just four in his original Application. (See id. at 2.)

Two days later on June 30, 2011, Mr. Rubinstein filed a "Supplemental List

---

[3] Although the State Bar of Texas website lists him as able to practice, Mr. Rubinstein may no longer be an active member of the Texas bar. In January 2006, Mr. Rubinstein consented to a two-year fully probated suspension from the State Bar of Texas for failing to properly record client trust funds. (See Gelbart Decl., Ex. O.) Even if Mr. Rubinstein were no longer admitted to practice law in Texas, the disciplinary proceeding against him there is surely relevant to his Application to appear in this Court and any motion he may bring to be designated class counsel.

9
DEFENDANT'S RESPONSE TO APPLICATION OF NON-RESIDENT ATTORNEY RUBINSTEIN

1  of Pro Hac Vice Applications Made to This Court Within the Past Three Years."
2  (See Dkt. No. 42.)   In it, Mr. Rubinstein disclosed two cases that had been omitted
3  from his original Application.  Remarkably, the stated reason for the omissions was
4  that Mr. Rubinstein's "name did not show up on a Pacer search under its correct
5  spelling."  (See id.)  The supplemental filing did not explain why Mr. Rubinstein
6  would have to search PACER to identify *pro hac vice* applications that he has filed
7  in the Central District.  On June 29, 2011, the Court issued its Order to Strike Mr.
8  Rubinstein's original Application.  (See Dkt. No. 43.)

9  Mr. Rubinstein submitted his second Application on July 1, 2011.  (Dkt. No.
10 44.)  But he still did not disclose his Texas bar membership status or provide a
11 certificate of good standing from the Texas bar.  He again submitted a Certificate of
12 Good Standing from the Florida bar (dated just four days prior to his original
13 Application), which oddly is addressed to a post office box in Rochelle, Texas—not
14 an address in Florida or Colorado.  (See Dkt. 44-1.)

15 The second Application again lists the wrong case name and number (but not
16 the wrong case name and number that was listed in his original Application).  (See
17 Dkt. No. 44.)  The second Application lists *eight* cases in this district (including this
18 case) in which Mr. Rubinstein has filed *pro hac vice* applications in the last three
19 years (up from four disclosed in the original Application and one more than was
20 disclosed with the supplemental filing).  (See Dkt. No. 44-2.)

21 Like the original Application, the second Application fails to provide a
22 complete explanation for why one of Mr. Rubinstein's disclosed *pro hac vice*
23 applications was denied.  Instead, Mr. Rubinstein merely states that his application
24 in "Weeks v. Mead Johnson Nutrition [case no. 2:09-cv-5835-DSF] . . . was denied
25 without prejudice."  (See Dkt. No. 44-2.)  Mr. Rubinstein's oblique description of
26 why it was denied is obviously not the detailed disclosure that is required by the
27 local rules.  A review of the order denying his application in the Weeks case may
28 explain the lack of candor.

On September 25, 2009, Judge Dale S. Fischer in the <u>Weeks</u> case issued an Order to Show Cause to Mr. Rubinstein because he was not admitted to practice before the Court and had failed to respond to a notice requiring him to pay his *pro hac vice* application fee. (<u>See</u> Order to Show Cause (Gelbart Decl., Ex. K) at 1.) On October 13, 2009, Judge Fischer issued another order—an Order Denying Without Prejudice Mr. Rubinstein's *pro hac vice* application—that was unrelated to Mr. Rubinstein's failure to pay the application fee. This time Judge Fischer denied the application because Mr. Rubinstein had listed inconsistent office addresses in his filings—listing a Colorado address on his application, while listing a Florida address on the caption. (<u>See</u> Order Denying Application (Gelbart Decl., Ex. L) at 1.) Judge Fischer noted that mail sent by the Court to the Colorado address had been returned as undeliverable. (<u>See</u> <u>id.</u>) Judge Fischer further noted—consistent with Defendant's counsel's information—that Mr. Rubinstein failed to disclose all cases in which he sought *pro hac vice* admission and that there were several additional cases where he was listed as counsel of record but had not even bothered to make *pro hac vice* applications. (<u>See</u> <u>id.</u>) Finally, Judge Fischer found that in a number of cases, Mr. Rubinstein failed to file applications, despite notices from the courts advising him to do so, and that several of those cases had been dismissed for lack of prosecution. (<u>See</u> <u>id.</u>)[4]

---

[4] Mr. Rubinstein was recently ordered to dismiss a proposed class action case he filed in the Northern District of California, styled <u>Meaunrit v. Snapple Beverage Corp.</u>, Case No. 3:10-cv-05153-JSW. The order was issued after Mr. Rubinstein prematurely terminated Ms. Meaunrit's deposition after she gave damaging testimony (but claimed to have developed a headache after a break). The two days after Mr. Rubinstein prematurely terminated her deposition, Ms. Meaunrit announced that she wanted to dismiss her complaint, rather than continuing her deposition. Mr. Rubinstein ignored Ms. Meaunrit's instructions and instead, by way of Mr. Proaps, filed an *ex parte* application seeking a protective order preventing the completion of Ms. Meaunrit's deposition and requesting a 30-day stay so he could
     (footnote continued)

Turning back to Mr. Rubinstein's Application to this Court, it appears that his designated local counsel, Richard A. Proaps, does not maintain an office in the Central District of California, as required by the local rules. (See Dkt. No. 44 at 2.) Mr. Proaps' office is in Fair Oaks, California (id.), which is in Sacramento County. And Sacramento County is not one of the seven counties that comprise the Central District. Mr. Proaps' attempt to bring himself within the Central District by additionally listing his contact information as "c/o" Rhett Rosen's North Hollywood address, is plainly unacceptable. (See Dkt. No. 44 at 2.)

### F. Unanswered Questions

Mr. Rubinstein's *pro hac vice* Application, especially in light of Ms. Nguyen's deposition testimony, raises serious questions about Mr. Rubinstein's request to be admitted to practice law in this Court. Defendant respecftfully submits that the following questions should be answered before Mr. Rubinstein's Application receives further consideration.

- Are "Howard W. Rubinstein," "Howard M. Rubinstein" and "Howard Rubinstein" the same person and, if so, why does he use different names for different cases?
- Why does Mr. Rubinstein fail to make timely (if at all) *pro hac vice* applications in all of the cases he files? Is it to minimize the number of *pro hac vice* applications he must disclose when he does make an

---

solicit a plaintiff to take over the lawsuit he supposedly filed for Ms. Meaunrit. The district court denied the application, finding that Ms. Meaunrit must either participate in her lawsuit or dismiss it with prejudice. The district court also denied Mr. Rubinstein's request for time to "conjure up another plaintiff." (See Order Denying Ex Parte Application (Gelbart Decl., Ex. M) at 1-2.) The action was shortly dismissed with prejudice. (See Order of Dismissal (Gelbart Decl., Ex. N) at 1-2.)

application?

- Does appearing as a non-resident attorney in so many cases disqualify Mr. Rubinstein from seeking *pro hac vice* admission in this case because he is essentially engaged in the regular practice of law in California? (<u>See</u>, <u>e.g.</u>, <u>Consorcia Mendoz v. Golden West Savings Ass'n Servs. Co.</u>, CV 09-1200 GAB (VBKx), 2009 LEXIS 64709 at *4 (C.D. Cal. July 7, 2009); L.R. 83-2.3.2(c).)
- Is Mr. Rubinstein practicing law in Colorado without a license?
- Is Mr. Rubinstein practicing law in the District of Columbia without a license?
- Is Mr. Rubinstein practicing law in California without a license because of the number of cases he files here, or because Mr. Proaps and Mr. Lopatin hold themselves out as attorneys with The Law Office of Howard W. Rubinstein while practicing from an office address in California?
- Is Mr. Rubinstein still admitted to practice law in Texas and, if so, why didn't he disclose that in his Application?
- Why did Ms. Nguyen give false and conflicting testimony about the engagement agreement, especially after taking breaks during her deposition?
- Why was Ms. Nguyen instructed to backdate her engagement agreement with the Texas lawyers?
- If Ms. Nguyen signed an engagement agreement in April 2010, why has she not produced it and why was she instructed to sign and backdate the agreement a week before her deposition in June 2011, and why was there no mention of a prior agreement when she did the backdating?
- Why did the other lawyers wait a year before entering into a written "Revised Engagement Agreement" with Ms. Nguyen?
- Why is the "Revised Engagement Agreement" purportedly with The

Hewell Law Firm, but signed by Mr. Rubinstein on behalf of The Law Offices of Howard W. Rubinstein?

- Why did the lawyers require Ms. Nguyen to cede complete control over the case to them?
- Why has Ms. Nguyen never seen the complaints filed on her behalf and why did the lawyers make allegations that Ms. Nguyen said were not true?
- Why did the lawyers instruct Ms. Nguyen to buy defendant's product so she could file this lawsuit?

The answers to these (and other) questions bear on whether Mr. Rubinstein's Application should be granted.

## Conclusion

Defendant Living Essentials respectfully requests that the Court exercise its discretion under L.R. 83.2.8.2 to deny Mr. Rubinstein's *pro hac vice* Application. Defendant also requests an order requiring Mr. Rubinstein and Ms. Nguyen's other counsel to submit declarations under oath that answer the serious questions raised by Mr. Rubinstein's Application and by Ms. Nguyen's sworn deposition testimony.

DATED:  July 7, 2011            CRONE HAWXHURST LLP


By_____/s/_____
    Gerald E. Hawxhurst
    Daryl M. Crone
    Joshua P. Gelbart
    Attorneys for Defendant
    Innovation Ventures, LLC